IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| | |
|---|---|
| SARAH ROE, <br><br> *Plaintiff,* <br><br> v. <br><br> LINDA HOWARD, <br><br> *Defendant.* | Civil Action No. 1:16-cv-562 <br> Hon. Liam O'Grady <br> Hon. John F. Anderson |

## MEMORANDUM OPINION

This matter comes before the Court on three of Defendant's Motions for Judgment as a Matter of Law. Dkt. Nos. 98, 99, and 101. The Motions are fully briefed and the Court heard oral arguments October 20, 2017. Defendant Linda Howard argues she is entitled to judgment as a matter of law for three reasons – first, because the statute of limitations on the Trafficking Victims Protection Act (TVPA) at the time of the relevant conduct would have barred the suit; second, as to Count III of the complaint, because the sexual abuse of Plaintiff Sarah Roe, a domestic worker, did not cause Ms. Roe "to engage in a commercial sex act" as defined under 18 U.S.C. § 1591; and third, because the TVPA proscriptions cannot be applied to Howard's 2007 extraterritorial conduct. For the reasons stated below, the Court **DENIES** Ms. Howard judgment as a matter of law on all points. A separate order has issued. Dkt. 107.

*Facts of the Case*

Sarah Roe brought this case under 18 U.S.C. § 1595, which provides a civil remedy for violations of the Trafficking Victims Protection Act (TVPA). On July 31, 2017, after a four-day

trial, a jury found defendant Linda Howard liable for forced labor in violation of 18 U.S.C. § 1589, forced labor trafficking in violation of 18 U.S.C. § 1590, commercial sex trafficking in violation of 18 U.S.C. § 1591, and conspiring to engage in those offenses in violation of 18 U.S.C. § 1594. The parties established the following facts at trial.

In 2007, while a U.S. citizen, employed by the State Department, and living in U.S. embassy housing, Linda Howard conspired with her husband, Russell Howard (deceased prior to trial) to entice plaintiff Sarah Roe into their employment as a live-in housekeeper. Once so employed, Russell Howard subjected Roe to repeated rapes and continuous sexual abuse. Dkt. 33, Stipulated Uncontested Facts ¶ 1.

Linda Howard spent months befriending Roe prior to hiring her as a housekeeper, including helping Roe obtain a data entry position with the U.S. embassy. Tr. 301:6-8, 305:22-306:24, 308:20-309:9. After the Howards' prior housekeeper fled, Linda Howard succeeded in hiring Roe, offering help with medical treatments, Roe's visa, and monetary compensation. Tr. 317:1-318:15. Linda Howard told Roe that it was Roe's job to "make Russell happy" because he "needs a friend" while he was home and Linda Howard worked. Tr. 321:1-2, 318:10-12. Upon moving into the Howards' embassy housing, the Howards presented her with her "uniform," which consisted of a very short skirt and a revealing blouse and which Linda Howard had sewed. Tr. 323:24-324:6. After Roe refused to wear the uniform, Russell Howard took Roe to the mall and purchased a new uniform for her: a "very revealing" "one-piece" that "opens in the front," and "underwear . . . with one tiny string" and "many holes." Tr. 323:8-21. After Ms. Roe refused to wear the new uniform, Russell Howard raped her in her bedroom. Tr. 325:8, 325:12-327:24. Russell Howard continuously raped and sexually assaulted Roe for the duration of her time with the Howards and threatened her to keep her silent. Tr. 334:25-335:22, 327:25-329.5. Linda

2

Howard was aware of these assaults. She "observe[d] Russell Howard touching [Roe] in a sexual manner," including her intimate parts. Tr. 419:10-16. Russell Howard told Roe that he spoke with his wife about the rapes and Roe once overheard Russell Howard doing just that over the phone. Tr. 329:6-8, 405:1-9. Ultimately, Russell Howard was unhappy with Roe's continuous resistance to his attacks and he fired her, though he continued to have contact with her to keep her silent about what had occurred. Tr. 335:23-336:11, 339:1-18.

*Statute of Limitations*

Ms. Howard contends that a four-year statute of limitations should apply to claims in this case, because in 2007, the time of Ms. Howard's relevant conduct, the statute of limitations under the TVPA was four years. Under a four-year statute of limitations, Ms. Roe's claims would have been time-barred when this litigation commenced. However, Congress amended the TVPA with the Trafficking Victims Protection Reauthorization Act (TVPRA) in 2008 to provide for a ten-year statute of limitations. At the time of amendment, Ms. Roe's claims were not yet time-barred. Accordingly, she is entitled to the full benefit of the amended statute of limitations.[1] *See Cruz v. Maypa*, 773 F.3d 138, 144-45 (4th Cir. 2014).

Ms. Howard also contends that Count IV of the Complaint asserts a common law civil conspiracy in addition to the TVPRA conspiracy, and is therefore subject to Virginia's shorter statute of limitations. While true that the complaint alleged conspiracy both in violation of the TVPRA provisions and common law civil conspiracy (Compl. at 17), the jury found Ms. Howard liable under TVPRA conspiracy, subject to the 10-year statute of limitations discussed *supra*. Tr. 581:7-10; Jury Instruction No. 29.

---

[1] Defendant concedes this point and notes that she only raises this statute of limitations issue to preserve argument on appeal. Dkt. 102 at 8.

3

Accordingly, Ms. Howard's motion for judgment as a matter of law based on the defense of the statute of limitations is denied.

***Commercial Sex Acts***

Ms. Howard next argues that she is entitled to judgment as a matter of law as to Count III of the Complaint because her conduct did not constitute a "commercial sex act" under 18 U.S.C. § 1591(a). The TVPA defines a "commercial sex act" as "any sex act, on account of which anything of value is given to or received by any person." 18 U.S.C. § 1591(e)(3). Ms. Howard argues for a narrow interpretation of that definition, one that requires a thing of value to have been paid to the Howards in exchange for Ms. Roe's acts. Dkt. 105 at 4. Ms. Howard further evidences this theory by citing to the testimony of Ms. Roe's expert witness, Florence Burke, who opined at trial that she would not consider sexual abuse of a domestic worker by an employer to constitute "commercial sex." Dkt. 102 at 7.

The Court finds this argument unconvincing. Ms. Burke was not qualified as an expert on Congressional intent and Ms. Howard cannot demonstrate that Burke had in mind § 1591(e)(3)'s definition of "commercial sex act" when she testified. *See* Tr. 215:14-18. Nor was Ms. Burke qualified to opine, as a matter of law, on what kind of conduct is prohibited under § 1591(a). *See United States v. McIver*, 470 F.3d 550, 562 (4th Cir. 2006). Ms. Howard's narrow definition is plainly contradicted by the language of the statute. Congress included the word "any" in reference to every element of the definition – any sex act, anything of value, any person. Here, the Court finds ample evidence to support the jury's verdict as to Count III, given that the Howards paid Ms. Roe a monthly salary for her services and those services included being subjected to forced sex acts. *See* Tr. 317:9-11, 321:1-2, 327:8-11, 22.

Accordingly, Ms. Howard's motion for judgment as a matter of law as to Count III is denied.

*Extraterritoriality*

Finally, Ms. Howard argues that she is entitled to judgment as a matter of law because the TVPA's civil remedies did not apply extraterritorially until 2008, after the Howards' extended sexual abuse of Ms. Roe occurred. Dkt. 102 at 2. Ms. Howard is correct that 18 U.S.C. § 1596, "Additional jurisdiction in certain trafficking offenses," which provides extraterritorial jurisdiction to "any offense (or any attempt or conspiracy to commit an offense) under section 1581, 1583, 1584, 1589, 1590, or 1591," was not enacted until 2008. *See WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT OF 2008, PL 110–457, December 23, 2008, 122 Stat 5044.*

However, the Court nonetheless finds that the jury's verdict in this case was proper for two reasons. First, extraterritorial application of the 2007 TVPA provisions is appropriate in this case because the relevant conduct sufficiently touches and concerns the United States. Second, retroactive application of 18 U.S.C. § 1596's civil remedy is permissible in this case because at the time Ms. Roe suffered her sexual abuse, federal criminal law prohibited Ms. Howard's conduct and could have subjected her to severe penalties.

*a. Pre-Amendment Extraterritorial Application of the TVPA*

The TVPA, including 18 U.S.C. § 1595 operative here, applied extraterritorially in certain circumstances prior to the 2008 addition of 18 U.S.C. § 1596. While there is generally a presumption against extraterritorial application of statutes, that presumption is rebuttable. *See Kiobel v. Royal Dutch Petroleum Co.*, 569 U.S. 108, 118 (2013). The presumption can be rebutted through clear evidence of Congressional intent to apply the statute extraterritorially or

evidence that the relevant conduct touches and concerns the United States with sufficient force to displace the presumption. *Id.* at 118, 125. Relevant factors for evaluating the force of displacement include the parties' identities and their particular roles in the cause of action. *See Al Shimari v. CACI Premier Technology, Inc.*, 758 F.3d 516, 527 (4th Cir. 2014). Once a court establishes that conduct touches and concerns the United States, the court must then examine whether the substantive violation also violates international customary law. *Mustafa v. Chevron Corp.*, 770 F.3d 170, 186 (2nd Cir. 2014) (citing *Kiobel*, 133 S. Ct. at 1673 (Breyer, J., concurring)). Importantly, the presumption against extraterritoriality arises from the principles of comity – "to protect against unintended clashes between our laws and those of other nations which could result in international discord." *Equal Opportunity Emp't Comm'n v. Arabian Am. Oil Co.*, 499 U.S. 244, 248 (1991); *see also* 18 § U.S.C. 3271(b) (requiring Attorney General or Deputy Attorney General approval to prosecute U.S. government employees for extraterritorial TVPA violations where a foreign country is already engaged in such prosecution). While *Kiobel* and its progeny deal with the extraterritoriality of the Alien Tort Statute, the Court finds that the framework is applicable to the Trafficking Victims Protection Act.

There is clear evidence that Ms. Howard's conduct touches and concerns the United States, rebutting the presumption against extraterritorial application of the TVPA in this case. Ms. Howard is a United States citizen who was stationed overseas in her official capacity as a State Department employee. Howard used her official position to exploit Sarah Roe by helping Roe obtain a legitimate position at the U.S. embassy and then enticing her out of that legitimate position and into Ms. Howard's house of horrors. All of the relevant conduct underlying the jury's verdict occurred in U.S. State Department housing. Ms. Howard's promises and threats used to entice and control Ms. Roe were effective only because of Howard's position with the

State Department. The totality of the evidence demonstrates clearly that Ms. Howard's conduct touches and concerns the United States.

As to the second prong of the analysis, human trafficking is prohibited under customary international law as well as statutory international law. *See generally* Convention to Suppress the Slave Trade and Slavery, Sept. 25, 1926, 60 L.N.T.S. 253; 1956 Supplementary Convention on the Abolition of Slavery, the Slave Trade, and Institutions and Practices Similar to Slavery, Sept. 7, 1956, 18 U.S.T. 3201.

Lastly, principles of international comity are not implicated here. Ms. Howard's position with the State Department would have granted her special protections from the laws of host nations. *See* The Vienna Convention on Diplomatic Relations, Apr. 18, 1961, 23 U.S.T. 3227. In holding Ms. Howard liable for her wrongs abroad, there is little risk of an unintended clash between U.S. law and those of other nations, since the laws of other nations would have limited application to the conduct giving rise to Ms. Howard's liability.

*b. Retroactive Application of 18 U.S.C. § 1596*

In addition to finding that extraterritorial application of the TVPA as it existed in 2007 is appropriate in this case, the Court finds that retroactive application of § 1596's extraterritorial civil remedies is also justified. The presumption against retroactive legislation is deeply rooted in our legal system, tethered to considerations of fairness – that "individuals should have an opportunity to know what the law is and to conform their conduct accordingly." *Landgraf v. USI Film Products*, 511 U.S. 244, 265 (1994). "A statute does not operate 'retrospectively' merely because it applies in a case arising from conduct antedating the statute's enactment, or upsets expectations based on prior law. Rather, the court must ask whether the new provision attaches new legal consequences to events completed before its enactment." *Id.* (internal citations

7

omitted). In evaluating the constitutionality of the retrospective application of a statute, courts must consider "whether it would impair rights a party possessed when he acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed." *Id.* at 280.

Courts have previously found that § 1596 cannot operate retroactively. *See Adhikari v. KBR, Inc.*, 845 F.3d 184, 207 (5th Cir. 2017). However, the analysis prescribed by the Supreme Court in *Landgraf* is necessarily fact-dependent. In this case, it is undisputed that Ms. Howard's conduct violated criminal statutes. *See* 18 U.S.C. § 3271 (making U.S. government employees criminally liable for extraterritorial violations of the TVPA). This is a key difference from the defendants in *Adhikari*, where the relevant conduct occurred prior to enactment of 18 U.S.C. § 3271 and it is not clear from the facts of the case that the defendants were "employed by or accompanying the Federal Government" at the time of the conduct, an element of a § 3271 offense.

Because of § 3271, Ms. Howard was on notice that her conduct in 2007 constituted a criminal violation of the TVPA, subjecting her to serious criminal penalties, including up to life imprisonment. *See* 18 U.S.C. § 1591(b). Additionally, Ms. Howard was on notice that she could be subjected to mandatory financial restitution to her victims for these violations. *See* 18 U.S.C. § 1593(b)(1). Because Ms. Howard's conduct already subjected her to severe criminal penalties, including financial restitution, the Court finds that retroactive application of § 1596's civil remedy would not impair Ms. Howard's rights, increase her liability for her conduct, or impose new duties upon her.

Accordingly, the facts of this case rebut the presumption against the extraterritorial application of the TVPA operative in 2007 and rebut the presumption against retroactive application of § 1596's extraterritorial civil remedy.

For these reasons and for good cause shown, the Court **DENIES** Ms. Howard's motions for judgment as a matter of law.

January 3, 2018
Alexandria, Virginia

Liam O'Grady
United States District Judge